SUCESORES DE ABARCA, INC., demandante y apelante, *v.*
SECRETARIO DE HACIENDA, demandado y apelado.

Número 11679.

*Reasignado:* 23 de mayo de 1958. *Resuelto:* 19 de junio de 1958.

484

*Fiddler, González & Nido* y *Carlos J. Faure,* abogados de la apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo (José Trías Monge, ex Secretario de Justicia,* en el alegato) y *Cándido Ceballos, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El 12 de septiembre de 1952 la corporación doméstica Central San José, Inc., le vendió a la sociedad anónima venezolana Ortiz y Mejías, toda la maquinaria y equipo de la Central San José, situada en Río Piedras, Puerto Rico; el 20 de octubre de 1952, Ortiz y Mejías le vendió a la sociedad por acciones venezolana Central Tocuyo la misma propiedad; el mismo 20 de octubre de 1952 la Central Tocuyo contrató con la corporación doméstica Sucesores de Abarca, Inc., el desmantelamiento, reparación, embalaje, y transportación hasta el muelle de San Juan de la maquinaria y equipo de dicha central y la reinstalación de la misma en el pueblo de Tocuyo, Estado de Lara, en Venezuela. El día 1ro. de enero de 1953 la Central San José había sido desmantelada,

y parte de sus materiales estaban en los muelles y parte en el sitio ocupado por la central, (T. 22). El primer embarque de materiales hacia Venezuela se efectuó el 28 de enero de 1953, (exhibit 1), y el último embarque se efectuó el 16 de octubre de 1953, (T. 21).

No hay duda que al 1ro. de enero de 1953, dichos materiales desmantelados se habían convertido en bienes muebles —art. 290 del Código Político de Puerto Rico, 13 L.P.R.A. sec. 443, págs. 407–408; que los mismos estaban bajo el cuidado, custodia y responsabilidad de Sucesores de Abarca, Inc., (T. 88–92–98–103). No hay duda asimismo que algunos de esos materiales fueron repuestos, reparados y aun vendidos en Puerto Rico, (T. 105 y 112).

El día 30 de diciembre de 1953, el Secretario de Hacienda le notificó a la apelante una imposición de contribución sobre propiedad mueble ascendente a $10,290 por haber estado en posesión el 1ro. de enero de 1953 de ciertos bienes muebles, propiedad de una sociedad extranjera. La apelante recurrió en primera instancia al Tribunal Superior de Puerto Rico, el cual declaró sin lugar la solicitud de cancelación del recibo contributivo interesada por la apelante. Ante nos, Sucesores de Abarca, Inc., alega que el tribunal recurrido erró "al resolver y sostener que procedía la imposición de la contribución a la apelante bajo las disposiciones de los artículos 293 y 295 del Código Político de Puerto Rico".

En el error señalado hay un grupo de problemas, que expuestos en forma sintética, resultan ser los siguientes: (1) no siendo la apelante dueña de la propiedad desmantelada, no tiene ninguna responsabilidad contributiva; (2) tratándose como se trata de una propiedad comprada por una compañía extranjera, con el objeto de trasladarla a otro país, dicha compañía extranjera tampoco tiene ninguna responsabilidad contributiva; (3) en el supuesto que la tuviera, dicha compañía tenía un representante y una oficina abierta a la fecha de la imposición.

 Es correcto que la dueña al 1ro. de enero de 1953, de los materiales desmantelados de la Central San José, lo era la compañía por acciones venezolana Central Tocuyo, pero tratándose de una compañía extranjera, la tasación tenía que ser hecha a la persona que tuviera la posesión de dichos bienes en Puerto Rico el día 1ro. de enero de 1953 —Art. 293 del Código Político de Puerto Rico—13 L.P.R.A. sec. 445, págs. 410-411. Como cuestión de realidad, la contribución sobre la propiedad se impone directamente sobre los bienes muebles y responde de ella el poseedor de dichos bienes en el día contributivo fijado para la imposición. Como bien argumenta la ilustrada sala sentenciadora, se trata de una mecánica suplida por la ley para hacer viable la imposición de una contribución sobre bienes en que el título presunto lo tiene el poseedor.

 No es correcto que cuando una compañía extranjera compra determinada propiedad mueble, con el objeto de trasladarla a su país, no tenga ninguna responsabilidad contributiva para el Estado en cuyo territorio se encuentra la propiedad comprada. El factor, determinante de la liberación contributiva no es la compra, sino el hecho físico del traslado. Mientras los bienes permanezcan en el territorio sobre el cual ejerce su poder de tributación determinado Estado forman parte del cuerpo de bienes a ser tasados. Este poder del Estado emana de su obligación correlativa de mantener un orden público que garantice la conservación de dichos bienes. Así por ejemplo, la regla práctica que se ha establecido, es, que la inmunidad contributiva que establece el Art. I, Sección 10, cláusula segunda de la Constitución de los Estados Unidos, se produce cuando a la fecha de la imposición contributiva, los bienes muebles han entrado en la etapa final del proceso de transportación desde el estado de origen al otro estado, no siendo suficiente, a tal efecto, la intención de las partes de proceder al embarque de dichos bienes, aun cuando después de la fecha de la imposición se proceda a tal embarque; ni el almacenaje de los

bienes con el objeto de proceder a embarcarlos desde dicho punto. Lo que se exige es un acto afirmativo de parte del vendedor que irrevocablemente sitúe a dichos bienes en la etapa final de abandonar el estado. Para lograr esta certeza se declara suficiente: (1) la entrega de los bienes a un porteador para ser transportados inmediatamente; (2) la determinación que los bienes son susceptibles de entrar en el curso del comercio extranjero, y como cuestión práctica, podrían usarse mejor en el extranjero que para un fin doméstico: *Coe* v. *Errol,* 116 U.S. 517, 29 L. Ed. 715 (Bradley), (1886), cita precisa a la pág. 527 U.S., 719 L. Ed.; *Empresa Siderúrgica, S. A.* v. *Merced,* 337 U.S. 154, 93 L. Ed. 1276, (Douglas), (1949), cita precisa a la pág. 157 U.S., 1280 L. Ed.; *Eardley Fisheries Company* v. *City of Seattle,* 314 P.2d 393, (Ott), (1957), cita precisa a la pág. 395. Hasta cierto extremo, este punto ya está dilucidado por nuestra jurisprudencia: *Island Needlework* v. *Tribunal de Contribuciones,* 65 D.P.R. 727, (Travieso), (1946), cita precisa a la pág. 731; *Buscaglia, Tesorero* v. *Tribunal de Contribuciones,* 68 D.P.R. 908, (Travieso), (1948), cita precisa a la pág. 911 *et seq.*

En cuanto a si la sociedad por acciones venezolana Central Tocuyo tenía o no tenía un representante u oficina en Puerto Rico, al 1ro. de enero de 1953, la conclusión de la ilustrada Sala sentenciadora fue en el sentido de que el señor Jacques de la Bastide, más que un representante, era un consejero técnico para la desmantelación, reparación, reposición y embalaje de la maquinaria y equipo de la dueña. Independientemente de sus facultades para dicho asesoramiento, el señor Jacques de la Bastide no tenía, a nombre de su mandante, la posesión del cuerpo de bienes sujeto a tributación, ni la posesión civil ni la posesión natural. Por el contrario, la entidad que tenía la posesión, tanto civil como natural, de los bienes muebles desde que se firmó el acta de entrega en 24 de septiembre de 1952, era la apelante Sucesores de Abarca, Inc. El art. 293 del Código Político de

Puerto Rico, se refiere a la posesión, "la propiedad mueble en poder de" comerciantes, comisionistas, apoderados, personas que tengan en su poder propiedad mueble perteneciente a otras. Examinada en conjunto, tanto la prueba documental como la testifical, la conclusión de la ilustrada Sala sentenciadora, no resulta "claramente errónea", sino más bien simplemente lógica. En Puerto Rico la posesión no se reconoce en dos personalidades distintas: Art. 374 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1448, págs. 645–646. Habiéndose puesto directamente la posesión de los bienes en Sucesores de Abarca, Inc. desde el 24 de septiembre de 1952, mediante un acta de entrega suscrita por todas las partes, no hay que pensar en otra posesión figurativa a nombre de un representante técnico.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Santana Becerra no intervino.